*1523 Appeal from a judgment of the Monroe County Court (Alex R. Renzi, J.), rendered October 5, 2005. The judgment convicted defendant, upon his plea of guilty, of burglary in the second degree.
It is hereby ordered that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the motion seeking to suppress statements made by defendant is granted, and the matter is remitted to Monroe County Court for further proceedings on the indictment.
Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him, upon his plea of guilty, of burglary in the second degree (Penal Law § 140.25 [2]). In appeal No. 2, he appeals from a judgment convicting him, also upon his plea of guilty, of attempted burglary in the second degree in satisfaction of a separate indictment (§§ 110.00, 140.25 [2]).
The conviction in appeal No. 1 arises from defendant’s theft of two bicycles in the Town of Irondequoit in the early morning hours of July 16, 2004. Defendant contends that County Court erred in refusing to suppress the statements that he made to the arresting officer because, inter alia, he was illegally detained in violation of his Fourth Amendment rights. We agree with defendant that his statements should have been suppressed on that ground. We note at the outset, however, that defendant’s contention is confined solely to the judgment of conviction in appeal No. 1, and that he raises unrelated issues in appeal No. 2 that are unaffected by our determination in appeal No. 1.
With respect to appeal No. 1, at approximately 6:00 a.m. on the day in question, the Irondequoit Police Department received a report of a suspect who was “possibly” stealing bicycles. The report was called in by a local Town Justice, who had found a bicycle in his driveway. In response to the report, a police officer drove to the residence of the Town Justice, who stated that his newspaper delivery woman had told him that she encountered a man riding one bicycle while simultaneously pulling the second bicycle that the Town Justice discovered was left in his driveway. The delivery woman had described the man to the Town Justice as a black male wearing a dark hooded sweatshirt and jeans.
Upon receiving that information, the officer left the Town Justice’s residence in search of the suspect. After driving approximately one block, the officer observed defendant, a black male wearing a dark hooded sweatshirt and greenish-colored jeans, emerge from a nearby yard riding a bicycle. Defendant proceeded to ride the bicycle down the sidewalk, whereupon the *1524 officer pulled alongside him and called out for him to stop. Defendant initially did not comply, but when the officer yelled a second time for him to stop, defendant complied. The officer then exited his vehicle and approached defendant. When asked at the suppression hearing what he initially said to defendant, the officer responded, “I told him that we had a report of a suspicious male possibly stealing bikes and that the description of the male was a male black wearing a darker . . . hooded sweatshirt and jeans, and as you can see you fit the description, so I just have to make an inquiry and you’ll be on your way if everything’s okay.” The officer testified similarly on cross-examination, explaining that, upon stopping defendant and explaining the reason therefor, the officer advised defendant that “after everything checks [out], you’ll be on your way.” The stop occurred at 6:21 a.m.
The officer proceeded to ask defendant a series of questions, including his identity, where he lived and what he was doing in the area. Defendant answered the officer’s questions. When the officer asked where he had gotten the bike, defendant said that he purchased it a week earlier from “some dude” for $45. At some point during the questioning, another police officer arrived at the scene, and that second officer remained on the sidewalk with defendant while the first officer at the scene commenced an investigation. The first officer went to several residences on the street and questioned homeowners to determine whether their homes or garages had been burglarized. At 6.45 a.m., approximately 24 minutes after defendant was initially stopped by the police, the newspaper delivery woman, acting on her own volition, arrived at the scene and identified defendant as the person she had observed earlier in the morning with two bicycles. Fifteen minutes later, a third officer arrived with a civilian who identified the bicycle that defendant was riding as his. Defendant was then placed under arrest, administered Miranda warnings, and interrogated by the police. He was ultimately indicted for two counts of burglary in the second degree, one count of burglary in the third degree, and three counts of petit larceny. While released on those charges, defendant committed another burglary, which is the subject of the indictment in appeal No. 2.
In its decision denying defendant’s suppression motion, the court concluded that, before encountering defendant, the information possessed by the first officer at the scene was sufficient to support a founded suspicion that criminal activity was afoot, justifying the “limited intrusion upon defendant’s freedom of movement” until the newspaper delivery woman arrived and *1525 identified defendant as the individual she had seen pulling the second bicycle. At that point, the court determined that the first officer at the scene had reasonable suspicion to believe that defendant had committed a crime, justifying defendant’s temporary detention. When the second civilian arrived and identified the bicycle that defendant had been riding as his, the officers had probable cause to arrest defendant.
We agree with defendant that his 24-minute detention following the stop by the first officer at the scene violated his Fourth Amendment rights. The court’s determination that the officer had a “founded suspicion that criminal activity [was] afoot” justified a common-law inquiry (People v Hollman, 79 NY2d 181, 191 [1992]), a level two intrusion under People v De Bour (40 NY2d 210, 223 [1976]). Pursuant to that level two intrusion, the officer was “entitled to interfere with [defendant] to the extent necessary to gain explanatory information”; he could not, however, forcibly seize defendant (id.). An officer making a common-law inquiry may detain a suspect temporarily, but only “to the extent necessary to obtain explanatory information” (People v Medina, 107 AD2d 302, 304 [1985]).
Here, the length of defendant’s detention exceeded that allowed pursuant to a common-law inquiry when, after first being asked for identifying information, defendant was held for 24 minutes while the first officer at the scene went to residences in the neighborhood searching for evidence of a crime. Once the officer began that process, defendant’s temporary seizure pursuant to a lawful common-law inquiry became an investigatory detention, a level three intrusion necessitating a reasonable suspicion that defendant had committed a crime (see People v Bruce, 306 AD2d 68, 69 [2003], lv denied 100 NY2d 618 [2003]; see generally People v Ryan, 12 NY3d 28, 29-31 [2009]). Significantly, the suppression court determined that such reasonable suspicion did not exist until the newspaper delivery woman arrived and identified defendant, which as noted was 24 minutes after the initial encounter. “The police are not at liberty to arrest and hold a suspect while they search for evidence sufficient to justify their action” (People v Williams, 191 AD2d 989, 990 [1993], lv denied 82 NY2d 729 [1993]; see People v Williams, 79 AD3d 1653, 1654 [2010], affd 17 NY3d 834 [2011] [“The officers were not at liberty to detain defendant (for 15 to 20 minutes) while other officers attempted to determine whether a burglary had in fact been committed, i.e., ‘until evidence establishing probable cause could be found’ ”]; see also Ryan, 12 NY3d at 30-31 [A detention of approximately 13 minutes was not authorized, even in the event that the police *1526 had reasonable suspicion warranting a level three investigatory detention]).
We would reach the same conclusion even if, as the dissent suggests, the police did not canvass the neighborhood until after the newspaper delivery woman arrived. The fact remains that defendant was detained for 24 minutes in the absence of reasonable suspicion. The court specifically found that 24 minutes separated defendant’s stop and the arrival of the newspaper delivery woman, and the People do not challenge that finding on appeal. In our view, the 24-minute detention was unlawful regardless of whether the police were going door-to-door in search of a crime during that time period.
We further conclude that a reasonable person in defendant’s position would not have felt free to leave after the first officer at the scene told him that, “after everything checks [out]” he would be “on [his] way” and then handed defendant off to another uniformed officer while he canvassed the neighborhood in search of a crime ([emphasis added]; see generally People v Hicks, 68 NY2d 234, 239-240 [1986]; People v Smith, 234 AD2d 946 [1996], lv denied 89 NY2d 1041 [1997]; People v McFadden, 179 AD2d 1003, 1004 [1992]).
We disagree with the dissent’s conclusion that defendant was not detained while the police officer conducted his investigation. First, the suppression court specifically found that there was a “temporary detention” of defendant while the officer conducted a “further investigation.” Thus, “the hearing court did not deny suppression on that ground, and since the issue was not determined adversely to defendant, we may not reach it on appeal” (People v Gerard, 94 AD3d 592, 593 [2012], citing People v Concepcion, 17 NY3d 192, 194-195 [2011]).
In any event, none of the cases cited by the dissent supports the conclusion that defendant here was not detained. In neither People v Anthony (85 AD3d 1634 [2011], lv denied 17 NY3d 813 [2011]) nor People v Ocasio (85 NY2d 982 [1995]) were the defendants ordered to remain in their places while the police conducted their investigations. In People v Smith (234 AD2d 946 [1996], lv denied 89 NY2d 1041 [1997]) and People v Yukl (25 NY2d 585 [1969], cert denied 400 US 851 [1970]), the defendants voluntarily accompanied officers to police headquarters with no indication that they were not free to leave. Here, in contrast, the investigating officer twice “yell[ed]” at defendant to stop riding his bike, and defendant complied with that order. The officer then told defendant that he could leave only “after everything checks [out],” which is tantamount to telling defendant that he could not leave until things did check out. *1527 Again, defendant complied, at which point he was handed off to another officer while the first officer investigated further. At that point, defendant could not reasonably “disregard the police and go about his business” (California v Hodari D., 499 US 621, 628 [1991]).
The fact that defendant complied with the officer’s requests does not mean that he was not detained. In fact, quite the opposite is true. A police encounter need not be forcible to constitute a seizure for Fourth Amendment purposes. “ ‘Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment. . . This is true whether a person submits to the authority of the badge or whether he succumbs to force’ ” (People v Howard, 147 AD2d 177, 180 [1989], appeal dismissed 74 NY2d 943 [1989] [emphasis added], quoting People v Cantor, 36 NY2d 106, 111 [1975]). “Submission to authority is not consent nor is a failure to argue with the police officer” (People v Dingman, 48 AD2d 739, 740 [1975]).
Here, because defendant was twice told to stop and remain at the scene with a uniformed officer while another officer conducted an investigation, we conclude that “a reasonable person would have believed that he was not free to leave” (United States v Mendenhall, 446 US 544, 554 [1980]; see generally People v Hicks, 68 NY2d 234, 239-240 [1986]; People v Smith, 234 AD2d 946 [1996], lv denied 89 NY2d 1041 [1997]; People v McFadden, 179 AD2d 1003, 1004 [1992]). Thus, we reverse the judgment in appeal No. 1, vacate the plea, grant that part of the omnibus motion of defendant seeking to suppress his statements, and remit the matter to County Court for further proceedings on the indictment.
With respect to appeal No. 2, “[t]he knowing, intelligent and voluntary waiver by defendant of the right to appeal encompasses his contention that County Court abused its discretion in denying his request for an adjournment to retain new counsel” (People v Morgan, 275 AD2d 970 [2000], lv denied 96 NY2d 761 [2001]; see People v La Bar, 16 AD3d 1084, 1084-1085 [2005], lv denied 5 NY3d 764 [2005]). In addition, “[b]y failing to object to the imposition of restitution at sentencing, which was not a part of the plea agreement, defendant failed to preserve for our review his contention that County Court erred in enhancing the sentence by imposing restitution at sentencing without affording him the opportunity to withdraw the plea” (People v Rhodes, 91 AD3d 1280, 1281 [2012]; see People v Lewis, 89 AD3d 1485, 1486 [2011]; People v Lovett, 8 AD3d 1007, 1007-1008 [2004], lv *1528 denied 3 NY3d 677 [2004]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (cf. Rhodes, 91 AD3d at 1281).
All concur except Peradotto, J., who dissents and votes to affirm in the following memorandum.